## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KARLA HULL
18827 Wavy Hill Avenue
Hagerstown, MD 21742

      Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION
300 Boston Scientific Way
Marlborough, MA 01752

Serve On:  Resident Agent
          Corporation Service Company
          100 Pearl Street, Fl MC-CSCI
          Hartford, CT  06103

      Defendant.

Civil Action No.:_____

**JURY TRIAL DEMANDED**

## COMPLAINT AND PRAYER FOR JURY TRIAL

1.     Plaintiff KARLA HULL is a resident of the State of Maryland.

2.     Defendant BOSTON SCIENTIFIC CORPORATION develops technology to diagnose and treat conditions related to the pelvic health of women. At all times relevant herein, BOSTON SCIENTIFIC CORPORATION was engaged in the business of placing medical devices into the stream of commerce by designing, manufacturing, marketing, packaging, labeling, advertising, promoting and selling such devices, including the BOSTON SCIENTIFIC CORPORATION Lynx ("Lynx Sling"). Defendant is a Massachusetts corporation with its principal place of business at One Boston Scientific Place, Natick, Massachusetts 01760, and was licensed to do, and was doing business, in Hagerstown, Maryland.

## JURISDICTION AND VENUE

4.     This Court has diversity subject matter jurisdiction over this action

pursuant to 28 U.S.C. 1332(a): "The district courts shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

interests and costs, and is between (1) citizens of different states." Damages to Plaintiff are

estimated in good faith to exceed the sum or value of $75,000, exclusive of interest and costs. 5.

The Court also has personal jurisdiction over the parties because Plaintiff submits

to the jurisdiction of the Court, and Defendant systematically and continually conducts business

here in Maryland and conducts business throughout the United States, including marketing,

advertising and sales directed to residents of the jurisdiction where Plaintiff resides.

## FACTUAL ALLEGATIONS

6.     Defendant sought and obtained Food and Drug Administration ("FDA") approval

to market the Lynx Sling under Section 510(k) of the Medical Device Amendment to the Food,

Drug and Cosmetics Act. Section 501(k) allows marketing of medical devices if the device is

deemed substantially equivalent to other legally marketed predicate devices marketed prior to

May 28, 1976. No formal review for safety or efficacy is required.

7.     The Lynx Sling is a product targeted at women who suffer from pain,

discomfort, and stress urinary incontinence as a result of the weakening or damage caused to the

walls of the vagina. The Lynx Sling is represented by the Defendant to correct and restore

normal vaginal structure by implantation of polypropylene mesh in the vaginal wall tethered in

place by two arms that extend up through the buttocks. It is specifically promoted to physicians

and patients as an innovative, minimally invasive procedure with minimal local tissue reactions,

2

minimal tissue trauma and minimal pain while correcting vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

8.      Moreover, these Lynx Slings contain a monofilament polypropylene mesh intended for the treatment of stress urinary incontinence. Despite claims that this material is inert, the scientific evidence shows that this material is biologically incompatible with human tissue and promotes an immune response in a large subset of the population receiving Defendant's Lynx Sling containing this material. This immune response promotes degradation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

9.      Defendant's Lynx Sling has been and continues to be marketed to the medical community and to patients as safe, effective, reliable, medical devices; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, primarily vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele, and as safer and more effective as compared to the traditional products and procedures for treatment, and 'other competing pelvic mesh products

10.     The Defendant has marketed and sold Lynx Slings to patients and the medical community at large through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable cash and non cash benefits to health care providers. Also utilized are documents, patient brochures, and websites, offering exaggerated and misleading expectations as to the safety and utility of the product

11.     At all times relevant to this action, Defendant, intentionally, recklessly and/or

negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of the Lynx Sling and advertised, promoted, marketed, sold and distributed the Lynx Sling as a safe medical device when, in fact, Defendant knew that the Lynx Sling was not safe for its intended purpose and that the Lynx Sling would cause, and did cause, serious medical problems, and in some patients, catastrophic and permanent injuries.

12.     Contrary to the Defendant's representations and marketing to the medical community and to the patients themselves, the Defendant's Lynx Slings have a high failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating re-operations, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Plaintiff, making it defective under the law. The defects stem from any or all of the following:

        a.      the use of polypropylene material in the mesh itself and the immune reaction that results, causing adverse reactions and injuries;

        b.      the design of the Lynx Sling to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

        c.      biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury;

        d.      the use and design of anchors in the Lynx Sling which when placed correctly is likely to pass through and injury major nerve routes in the pelvic region;

        e.      degradation of the mesh itself over time which causes the internal tissue to

4

degrade resulting in injury;

    f. the welding of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike; and

    g. the design of trocars, as devices to insert the Lynx Sling into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries.

  13. The Defendant has consistently underreported and withheld information about the propensity of Defendant's Lynx Sling to fail and cause injury and complications, and has misrepresented the efficacy and safety of the product, through various means and media, actively and intentionally misleading the FDA, the medical community, patients, and the public at large.

  14. Despite the chronic underreporting of adverse events associated with the Defendant's Lynx Sling and the underreporting of events associated with similarly designed competitor products, enough complaints were recorded for the FDA to issue a public health notification regarding the dangers of these devices.

  15. October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to pelvic mesh products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA's MAUDE database indicates that the Defendant is one of the manufacturers of the products that are the subject of the notification

  16. On July 13, 2011, the FDA issued a Safety Communication: "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic

Organ Prolapse". Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious concern." (emphasis added). The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were "not rare." (emphasis in the original). These serious complications include, but are not limited to neuromuscular problems, vaginal scarring/shrinkage, and emotional problems. Many of the serious complications required medical and surgical treatment and hospitalization. The FDA concluded that it was not clear that transvaginal repair of pelvic organ prolapse with mesh or repair of SUI with mesh kits was more effective than traditional non mesh repair of pelvic organ prolapse. The FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded based thereon, that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair." In the July 13, 2011 Safety Communication, the FDA concluded that "a mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible." The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13, 2011 was known or knowable to Defendant and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use or labeling.

      17.    Defendant has known that some of the predicate products for the Lynx Sling

have high failure and complication rates, resulting in the recall of some of these predicate

devices (including a medical device known as Protogen device); that there were and are

differences between the Defendant's Lynx Sling and some or all of the predicate products,

rendering them unsuitable for designation as predicate products; that significant differences exist

and existed between the Lynx Sling and its predecessor and predicate products, such that the

disclosures to the FDA were and are incomplete and misleading; and that the Lynx Sling was

and

is causing numerous patients severe injuries and complications. The Defendant suppressed this

information, and failed to accurately and completely disseminate or share this and other critical

information with the FDA, healthcare providers, or the patients. As a result, the Defendant

actively and intentionally misled and continue to mislead the public, including the medical

community, health care providers and patients, into believing that the Lynx Sling and the

procedures for implantation were and are safe and effective, leading to the prescription for and

implantation of the Lynx Sling into the Plaintiff.

18.     Defendant failed to perform or rely on proper and adequate testing and research in

order to determine and evaluate the risks and benefits of its Lynx Sling.

19.     Defendant failed to design and establish a safe, effective procedure for removal of

the Lynx Sling; therefore, in the event of a failure, injury, or complications it is impossible to

easily and safely remove the Lynx Sling.

20.     Feasible and suitable alternative designs as well as suitable alternative procedures

and instruments for implantation have existed at all times relevant as compared to the

Defendant's Lynx Sling.

21.    The Lynx Sling was at all times utilized and implanted in a manner foreseeable to the Defendant, as Defendant generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

22.    The Defendant provided incomplete, insufficient, and misleading training and information to physicians, in order to increase the number of physicians utilizing the Lynx Sling and thus increase the sales of the product, and also leading to the dissemination of inadequate and misleading information to patients, including Plaintiff.

23.    The product implanted into the Plaintiff was in the same or substantially similar condition as it was when it left the possession of Defendant, and in the condition directed by and expected by the Defendant.

24.    Plaintiff and her physicians foreseeably used and implanted the Lynx Sling, and did not misuse, or alter the Lynx Sling in an unforeseeable manner.

25.    The injuries, conditions, and complications suffered by women who have been implanted with Defendant's product include but are not limited to mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia (pain during sexual intercourse), blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, prolapse of organs, and in many cases the women have been forced to undergo intensive medical treatment, including but not limited to operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia.

26.    The medical and scientific literature studying the effects of polypropylene pelvic mesh, like Defendant's Lynx Sling, have examined each of these injuries, conditions, and complications and determined that they are in fact casually related to the mesh itself and do not often implicate errors related to the implantation of the device.

27.    Defendant misrepresented to the medical and healthcare community, Plaintiff, the FDA, and the public that the Lynx Sling had been tested and was found to be safe and effective for the purposes of treating incontinence and/or prolapse.

28.    These representations were made by Defendant with the intent of inducing the medical community, Plaintiff, and the public, to recommend, prescribe, dispense, and purchase the Lynx Sling for use as a means of treatment for stress urinary incontinence and/or prolapse, all of which evinced an indifference to the health, safety, and welfare of Plaintiff.

29.    Defendant failed to undertake its duty to properly know the qualities of its products and in representations to Plaintiff and/or to Plaintiff's healthcare providers, and concealed and intentionally omitted the following material information:

a.    that the Lynx Sling was not as safe as other products and procedures available to treat incontinence and/or prolapse;

b.    that the risk of adverse events with the Lynx Sling were higher than with other products and procedures available to treat incontinence and/or prolapsed;

c.    that the risk of adverse events with the Lynx Sling were not adequately tested and this was known by the Defendant;

d.    that the limited clinical testing revealed the Lynx Sling to have a higher risk of adverse effects, in addition to, and above and beyond those associated with other products

and procedures available to treat incontinence and/or prolapse;

      e.    that Defendant failed to follow up on the adverse results from clinical studies and buried and/or misrepresented those findings;

      f.    that Defendant was aware of dangers in its product in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

      g.    that the Lynx Sling was dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

      h.    that patients needed to be monitored more regularly than usual while using the Lynx Sling and that in the event the products needed to be removed, that the procedures to remove it had a very high failure rate and/or needed to be performed repeatedly;

      i.    that the Lynx Sling was not manufactured negligently;

      j.    that the Lynx Sling was manufactured defectively; and

      k.    that the Lynx Sling was designed negligently, and designed defectively.

30.    Defendant had a duty to disclose to Plaintiff and her physicians, the defective nature of the product, including, but not limited to, the heightened risks of erosion, failure and permanent injury.

31.    Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the product.

32.     Defendant's concealment and omissions of material fact concerning the safety of the Lynx Sling was made to cause Plaintiff's physicians and healthcare providers to purchase, prescribe, and/or dispense the product; and/or to mislead Plaintiff into reliance and cause Plaintiff to use the product.

33.     At the time these representations were made by Defendant, and at the time Plaintiff used the product, Plaintiff was unaware of the falsehood of these representations, and reasonably believed them to be true.

34.     Defendant knew and had reason to know that the Lynx Sling could and would cause severe and grievous personal injury to the users, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

35.     In reliance upon these false representations, Plaintiff was induced to, and did use the Lynx Sling, thereby sustaining severe and permanent personal injuries and damages. Defendant knew or had reason to know that Plaintiff and her physicians, and other healthcare providers, had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the use of the Lynx Sling, as described in detail herein.

36.     As a result of Defendant's research and testing or lack thereof, Defendant distributed false information, including but not limited to assuring Plaintiff, the public, and Plaintiff's healthcare providers and physicians, that the Lynx Sling was safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and was as safe or safer than other products and/or procedures available and on the market. As a result of Defendant's research and testing, or lack thereof, Defendant intentionally omitted, concealed and suppressed

certain results of testing and research to healthcare professionals, Plaintiff, and the public at large.

37.      Defendant has a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiff, Plaintiff's healthcare providers, and the FDA.

38.      The information distributed to the public, the medical community, the FDA, and Plaintiff by Defendant included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Lynx Sling.

39.      Defendant intentionally made material misrepresentations to the medical community and public, including Plaintiff, regarding the safety of its product specifically that the Lynx Sling did not have dangerous and/or serious adverse health safety concerns, and that the Lynx Sling was as safe as other means of treating vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

40.      Defendant intentionally failed to inform the public, including Plaintiff, of the high failure rate including erosion, the difficulty of removing the mesh, and the risk of permanent injury.

41.      Defendant chose to over promote the safety, efficacy and benefits of the Lynx Sling instead.

42.      Defendant's intent and purpose in making these misrepresentations was to deceive the public, the medical community, and Plaintiff, to gain the confidence of the public,

the medical community, and Plaintiff, to falsely assure them of the quality and fitness for use of the Lynx Sling; and induce Plaintiff, the public and the medical community to request, recommend, prescribe, dispense, purchase, and continue to use the Lynx Sling.

43.     Defendant made claims and representations in its documents submitted to the FDA and its reports to the public, and to healthcare professionals and in advertisements, that the Lynx Sling did not present serious health risks.

44.     These representations, and others made by Defendant, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts. These representations, and others made by Defendant, were made with the intention of deceiving Plaintiff, Plaintiff's healthcare professionals, and other members of the healthcare community, and were made in order to induce Plaintiff, and her respective healthcare professionals, to rely on misrepresentations and caused Plaintiff to purchase, rely, use, and request the and its healthcare professionals to dispense, recommend, or prescribe the Lynx Sling.

45.     Defendant recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Lynx Sling to the public at large, for the purpose of influencing the sales of a product known to be dangerous and defective, and/or not as safe as other alternatives. Defendant utilized direct-to-consumer advertising to market, promote, and advertise the Lynx Sling.

46.     At the time the representations were made, Plaintiff and her healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Lynx Sling. Plaintiff did not discover the true facts about the dangers and serious health

and/or safety risks, nor did Plaintiff discover the false representations of Defendant, nor would Plaintiff with reasonable diligence have discovered the true facts or Defendant's misrepresentations.

47.     Had Plaintiff known the true facts about the dangers and serious health and/or safety risks of the Lynx Sling, Plaintiff would not have purchased, used, or relied on Defendant's product.

48.     At all times relevant herein, the Lynx Sling was widely advertised and promoted by the Defendant, as a safe and effective treatment for vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele. Defendant downplayed the risks posed to rectocele and vaginal prolapse patients with implantation of the Lynx Sling.

49.     At all times relevant to this action, Defendant knew that the Lynx Sling was not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and worsening dyspareunia. Removal of eroded or infected mesh brings a high rate of life threatening complications including permanent disfigurement and hemorrhage. Removal can require multiple surgical interventions in the operating theater for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

50.     At all relevant times herein, Defendant continued to promote the Lynx Sling as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

51.     In doing so the Defendant concealed the known risks and failed to warn of known

or scientifically knowable dangers and risks associated with the Lynx Sling for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

52.     At all relevant times herein, Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Lynx Sling including, but not limited to, mesh erosion, dense adhesions, worsening dyspareunia, chronic pain, infection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

53.     The Lynx Sling as designed, manufactured, distributed, sold and/or supplied by Defendant was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendant's knowledge of lack of pelvic health safety.

54.     At all times herein mentioned, the officers and/or directors of the Defendant named herein participated in, authorized and/or directed the production and promotion of the aforementioned product when they knew of the hazards and dangerous propensities of said product, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## PLAINTIFF'S EXPERIENCE AND INJURIES

55.     On or about, November 9, 2018, Plaintiff KARLA HULL was implanted with a Lynx Sling. The Lynx Sling was designed, manufactured, packaged, labeled and sold by Defendant.

56.     The Lynx Sling was implanted in Plaintiff KARLA HULL with the intention of treating the Plaintiff for stress urinary incontinence, cystocele, and rectocele, uses for which Defendant marketed and sold the products.

57.     At all times, the Lynx Sling implanted into Plaintiff KARLA HULL was being used for the purposes that Defendant marketed the product.

58.     After, and as a result of the implantation of the Lynx Sling, Plaintiff KARLA HULL suffered serious bodily injuries, including, but not limited to, extreme pain, discomfort, urinary problems, dyspareunia, and other injuries. These injuries would not have occurred but for the defective nature of the products implanted and/or Defendant's wrongful conduct.

59.     It was not until the July 13, 2011, FDA statement when, for the first time, Plaintiff began to believe that the Lynx Sling that had been implanted into her may have been defective and that she may have sustained an injury as a result of having had Defendant's defective product.

60.     As a result of having the Lynx Sling implanted into her, Plaintiff KARLA HULL has experienced significant mental and physical pain and suffering, and has sustained permanent injury.

61.     As a result of the aforesaid conduct and defective products manufactured, sold, distributed, advertised, and promoted by Defendant, Plaintiff KARLA HULL was injured in her health, strength, and activity, sustaining injury to her person, all of which injuries have caused Plaintiff severe mental and physical pain and suffering. Plaintiff is informed and believes, and alleges thereon, that such injuries will result in some permanent disability to her person. As a result of such injuries, Plaintiff has suffered general damages in an amount within the jurisdiction of this Court.

62.     As a further result of the aforesaid conduct and defective products

manufactured, sold, distributed, advertised, and promoted by Defendant, Plaintiff KARLA

HULL was required to and did employ health care providers and incurred, medical, hospital and

incidental expenses; further, Plaintiff is informed and believes, and alleges thereon, that Plaintiff

will be required to incur additional medical, hospital, and incidental expenses thereto, all

according to proof.

63.     As a further result of the aforesaid conduct and the defective products

manufactured, sold, distributed, advertised, and promoted by Defendant, Plaintiff KARLA

HULL has suffered a loss of earnings and earning capacity and will continue to suffer a loss of

future earnings, according to proof.

**FIRST CAUSE OF ACTION**
[Strict Product Liability   Failure to Warn]

64.     Plaintiff realleges and hereby incorporates herein by reference each of the

foregoing allegations of this complaint as though fully set forth herein.

65.     Defendant, manufactured, sold and/or distributed the Lynx Sling to Plaintiff to be

used for treatment of vaginal prolapse, stress urinary incontinence and rectocele.

66.     At all times mentioned herein, the Lynx Sling was and is, dangerous and

presented a substantial danger to patients who were implanted with the Lynx Sling, and these

risks and dangers were known or knowable at the time of distribution and implantation in

Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the

Lynx Sling posed to pelvic reconstruction patients because its uses were specifically promoted to

improve the health of such patients. The Lynx Sling was used by Plaintiff in a way reasonably

foreseeable to Defendant. Defendant failed to provide warnings of such risks and dangers to

17

Plaintiff as described herein.

67.     As a result of the implantation of the Lynx Sling, Plaintiff suffered

debilitating injuries including mesh erosion, hardening, chronic pain and worsening dyspareunia,

and recurrent incontinence leading to the need for dangerous and serious vaginal surgery.

68.     In doing the acts herein described, the Defendant acted with oppression, fraud and

malice, and Plaintiff is therefore entitled to punitive damages to deter Defendant, and others

from engaging in similar conduct in the future. Said wrongful conduct was done with advance

knowledge, authorization and/or ratification of an officer, director and/or managing agent of the

Defendant.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.


**SECOND CAUSE OF ACTION**
**[Strict Liability]**


69.     Plaintiff realleges and hereby incorporates herein by reference each of the

foregoing allegations of this complaint as though fully set forth herein.

70.     The Lynx Sling was manufactured and/or supplied by the Defendant, and placed

into the stream of commerce by the Defendant in a defective and unreasonably dangerous

condition in that the foreseeable risks exceeded the benefits associated with its design of

formulation.

71.     Alternatively, the Lynx Sling manufactured and/or supplied by the Defendant

Was defective in design or formulation, inadequate warning or instruction and/or inadequate post

marketing warnings or instructions in that when it was placed in the stream of commerce, it was

unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and

more dangerous than other forms of stress urinary incontinence, pelvic organ prolapse and rectocele repair.

72.     As a result of the defective unreasonably dangerous condition of the product manufactured and/or supplied by the Defendant, Plaintiff was caused to suffer the herein described injuries and damages.

73.     Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by the Lynx Sling.

74.     Defendant thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiff's and the general public's safety, who accordingly request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendant for their conduct, in an amount sufficiently large to be an example to others and deter the Defendant and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendant.

WHEREFORE, Plaintiff prays for judgment against Defendant, as hereinafter set forth.


### THIRD CAUSE OF ACTION
### [Negligence]

75.     Plaintiff realleges and hereby incorporates herein by reference each of the foregoing allegations of this complaint as though fully set forth herein.

76.     Defendant and its representatives were manufacturers and/or distributors of the Lynx Sling. At all times herein, Defendant had a duty to properly manufacture, compound, test,

inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

77.     Defendant so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied aforesaid product, that it was dangerous and unsafe for the use and purpose for which it was intended, that is, urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele repair in Plaintiff and others similarly situated. As a result of the carelessness and negligence of Defendant, Plaintiff had the Lynx Sling described herein implanted in the manner intended by the Defendant, and, as a result, Plaintiff suffered the injuries and damages described herein.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### [Breach of Implied Warranty]

78.     Plaintiff realleges and hereby incorporates herein by reference each of the foregoing allegations of this complaint as though fully set forth herein.

79.     Defendant impliedly warranted that the Lynx Sling, which Defendant designed, manufactured, assembled, promoted and sold to Plaintiff was merchantable and fit and safe for ordinary use. Defendant further impliedly warranted that its Lynx Sling was fit for the particular purpose of correcting urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele.

80.     Defendant's Lynx Sling was defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which it was sold, and subjected

Plaintiff to severe and permanent injuries. Therefore, Defendant breached the implied warranties

of merchantability and fitness for a particular purpose when its Lynx Sling was sold to Plaintiff,

in that the product was defective and had eroded and caused dense scarring and otherwise failed

to function as represented and intended.

81.     As a result of Defendant's breach of the implied warranties of merchantability

and fitness for a particular purpose, Plaintiff has sustained and will continue to sustain the

injuries and damages described herein and are therefore entitled to compensatory damages.

82.     After Plaintiff was made aware that her injuries were a result of the aforesaid

Lynx Sling, Defendant had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## FIFTH CAUSE OF ACTION
## [Breach of Express Warranty]

83.     Plaintiff realleges and hereby incorporates herein by reference each of the

foregoing allegations of this complaint as though fully set forth herein.

84.     Defendant expressly warranted to Plaintiff and/or her authorized agents or

sales representatives, in publications, and other communications intended for medical patients,

and the general public, that the defective Lynx Sling was safe, effective, fit and proper for its

intended use.

85.     Plaintiff and Plaintiff's physicians reasonably relied upon the skill and

judgment of Defendant, and upon said express warranty, in using the aforesaid products. The

warranty and representations were untrue in that the product caused severe injury to Plaintiff and

were unsafe and, therefore, unsuited for the use in which it was intended and caused Plaintiff to

21

sustain damages and injuries herein alleged.

86.     As soon as the true nature of the product, and the fact that the warranty and representations were false, was ascertained, said Defendant had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### [Fraud]

87.     Plaintiff realleges and hereby incorporates herein by reference each of the foregoing allegations of this complaint as though fully set forth herein.

88.     Defendant falsely and fraudulently represented to Plaintiff, her physicians, and to members of the general public that the aforesaid product was safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer. The representations by said Defendant were in fact, false. The true facts include, but are not limited to that the aforesaid product was not safe to be used for treatment of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse, or rectocele repair, and was, in fact, dangerous to the health and body of Plaintiff.

89.     When the Defendant made these representations, they knew that they were false. Defendant made said representations with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiff to act in the manner herein alleged, that is to use the aforementioned products for treatment of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse, or rectocele repair.

22

90.     At the time Defendant made the aforesaid representations, Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff was induced to, and did, use the aforesaid product as herein described. If Plaintiff had known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon Defendant's representations were justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

91.     As a result of Defendant's fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages.

92.     In doing the acts herein alleged, the Defendant acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter Defendant and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendant.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### [Fraud by Concealment]

93.     Plaintiff realleges and hereby incorporates herein by reference each of the foregoing allegations of this complaint as though fully set forth herein.

94.     At all times mentioned herein, Defendant had the duty and obligation to disclose to Plaintiff and to her physicians, the true facts concerning the aforesaid Lynx Sling,

that is, that said product was dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendant made the affirmative representations as set forth above to Plaintiff and her physicians and the general public prior to the date the Lynx Sling was implanted in Plaintiff, while concealing material facts.

95.     At all times herein mentioned, Defendant, willfully, and maliciously concealed facts as set forth above from Plaintiff and her physicians, and therefore, Plaintiff, with the intent to defraud as herein alleged.

96.     At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized the Lynx Sling for correction of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele. Defendant's representations were a substantial factor in Plaintiff utilizing the Lynx Sling for correction of her medical conditions.

97.     As a result of the concealment of the facts set forth above, Plaintiff sustained injuries as hereinafter set forth.

98.     In doing the actions herein alleged, Defendant acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to Defendant's wealth, and sufficiently large to be an example to others, and to deter this Defendant, and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
**[Negligent Misrepresentation]**

24

99.     Plaintiff realleges and hereby incorporates herein by reference each of the foregoing allegations of this complaint as though fully set forth herein.

100.     At all relevant times herein, Defendant represented to Plaintiff and her physicians that the Lynx Sling was safe to use to correct stress urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele knowing that the Lynx Sling was defective and capable of causing the injuries described herein.

101.     The Defendant made the aforesaid representations with no reasonable ground for believing them to be true when Defendant's own data showed the Lynx Sling to be defective and dangerous when used in the intended manner.

102.     The aforesaid representations were made to the physicians prescribing the Lynx Sling prior to the date it was prescribed to Plaintiff and used by her physicians with the intent that Plaintiff and her physicians rely upon such misrepresentations about the safety and efficacy of the Lynx Sling. Plaintiff and their physicians did reasonably rely upon such representations that the aforesaid product was safe for use to correct stress urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele.

103.     The representations by said Defendant to Plaintiff were false, and thereby caused Plaintiff's injuries described herein.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth. WHEREFORE Plaintiff prays for judgment as follows:

1.     For general damages in a sum within the jurisdiction of this Court, in excess of $75,000.00;

2.     For medical, hospital, and incidental expenses, according to proof;

25

3.      For loss of earnings and for loss of earning capacity, according to proof;

4.      For costs of suit;

5.      For punitive or exemplary damages;

6.      For such other relief as the Court deems just and proper.


Respectfully Submitted,

**LAW OFFICE OF BARRY R. GLAZER, LLC**

By: _____/s/_____
     Robert E. Joyce (#26427)
     P.O. Box 27166
     1010 Light Street
     Baltimore, Maryland 21230
     Phone:  (410) 547-8568
     Fax:     (410) 547-0036
     E-mail:  RJoyce@barryglazer.com

Attorneys for Plaintiff